SANDRA R. BROWN
Acting United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
KAREN E. ESCALANTE (Cal. Bar No. 304686)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3358
    Facsimile: (213) 894-6269
    E-mail:    karen.escalante@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 17-MJ-1913 |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION FOR PRE-TRIAL DETENTION; EXHIBITS |
| v. | |
| BERNHARD EUGEN FRITSCH, | Hearing Date: August 3, 2017<br>Hearing Time: 2:00 p.m.<br>Location:    Courtroom of the<br>Hon. Alexander F.<br>MacKinnon |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Karen E. Escalante, hereby files its Motion for Pre-Trial Detention.

///

///

This Motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 2, 2017                    Respectfully submitted,

                                         SANDRA R. BROWN
                                         Acting United States Attorney

                                         LAWRENCE S. MIDDLETON
                                         Assistant United States Attorney
                                         Chief, Criminal Division


                                              /s/
                                         _____
                                         KAREN E. ESCALANTE
                                         Assistant United States Attorney

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   BACKGROUND

BERNHARD EUGEN FRITSCH ("defendant") has been charged in a criminal complaint with one count of wire fraud in violation of Title 18, United States Code, Section 1343.  As set forth in the affidavit in support of the criminal complaint, defendant is the Chief Executive Officer of StarClub, Inc. ("StarClub"), a start-up technology company that purports to develop computer software applications to assist "social media influencers," such as celebrities, athletes, and individuals with a large social media presence, in monetizing their brand endorsements.  Since January 1, 2014, defendant engaged in a scheme or artifice to defraud, or for obtaining money by means of false or fraudulent pretenses, representations, or promises, which caused investors to wire approximately $35 million to StarClub.  The investors believed that they were financing StarClub's ability to develop what StarClub described as "Channels" for the influencers, technology enhancements related to such "Channels", working capital, and general corporate purposes.  Instead, however, defendant used the funds to purchase luxury cars and goods, and to subsidize his luxurious lifestyle.

On August 2, 2017, law enforcement executed a search warrant at StarClub's premises.  Defendant believed he would be meeting with a potential investor who was about to invest millions into StarClub.  Unbeknownst to defendant, however, the potential investor was an undercover agent from the Federal Bureau of Investigation ("FBI").  Also present at that meeting were defendant's associates and potential co-conspirators, including Ian Cartwright who, as alleged in the affidavit, is StarClub's former Chief Technology Officer

("CTO") and who is presently living in Germany.  After the FBI began its execution of the search warrant, Cartwright left Starclub's business premises, preceded to LAX and booked a ticket back to Germany that same evening.  (Ex. A.)

**II.  ARGUMENT**

   **A.   Legal Standard**

The Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq., requires pretrial detention of a defendant where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Courts must consider several factors when determining whether there are any conditions or combination of conditions that will reasonably assure the appearance of the defendant as required and the safety of the community, including: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, such as the person's character, family ties, financial resources, community ties, and past conduct, among other characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  18 U.S.C. § 3142(g); United States v. Winsor, 785 F.2d 755, 757 (9th Cir. 1986).

Detention is appropriate where defendant is either a flight risk or danger to the community; it is not necessary to prove both. United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985); United States v. Kouyoumdjian, 601 F. Supp. 1506, 1508-10 (C.D. Cal. 1985).  A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence.  United States v.

2

Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991).  Furthermore, the Ninth Circuit has made clear that economic danger can be a basis for detention.  United States v. Reynolds, 956 F.2d 192 (9th Cir. 1992); see also United States v. Possino, No. CR 13-0048-SVW-3 (JEM), 2013 WL 1415108 (C.D. Cal. Apr. 8, 2013); United States v. Cohen, 2010 WL 5387757 (N.D. Cal. Dec. 10, 2010).

> **B.   Defendant is a Flight Risk**
>
> > 1.   Nature and circumstances of the offense

The offense charged in the criminal complaint is one count of wire fraud.  The particular wire charged was for $1,000,000 and, as alleged in the criminal complaint, during a three-year period beginning on or around January 1, 2014, through December 31, 2016, defendant received approximately $35 million of investor money.  Of those funds, defendant transferred about $7.9 million directly into non-StarClub business entities controlled by him or his associates. Those entities then used the funds to pay for a wide-range of business expenses, such as residential mortgage and property tax payments, luxury cars, medical care, clothing, jewelry, and travel.

The Ninth Circuit has recognized that the greater a defendant's sentencing exposure, the greater his incentive to leave.  United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) (affirming order of detention entered after arrest on complaint where, among other factors, defendant faced even graver penalties under the indictment that was subsequently filed and, thus, had "an even greater incentive to consider flight").  Here, defendant used sophisticated means to perpetuate the loss and the potential loss amount is $35 million — the amount of money contributed by investors between January 1, 2014, and December 31, 2016.  Thus, defendant's

advisory Sentencing Guidelines offense level will likely be 31, which, even for a defendant with no prior criminal history, results in an advisory Guidelines range of 108-135 months.

### 2.   Weight of evidence against defendant

The weight of the evidence in this case is strong.  The government's evidence consists of investor interviews; e-mail correspondence between defendant and investors; subscription and stock purchase agreements; account records for at least 11 accounts associated or affiliated with StarClub; and audio-recordings of investor pitch presentations, among other evidence.

Further, in connection with defendant's arrest, the FBI executed a search warrant at StarClub's premises on August 2, 2017.  During that search, the FBI gathered several digital devices that it has imaged and which it will review in accordance with the terms of the search warrant, as well as numerous company records that fell within the scope of the search warrant.

### 3.   History and Characteristics of defendant

#### a.   Defendant's history of fraud

On May 6, 2014, Alpha Capital, Anstalt ("Alpha Capital") filed a civil suit against defendant and StarClub, alleging fraud by defendant and StarClub.  (See Ex. B.)  As noted in the affidavit, that lawsuit was settled.

#### b.   Defendant's history of lying to law enforcement

The government understands that on or about April 25, 2003, an FBI SA attempted to serve a subpoena on defendant at his Connecticut address.  Defendant identified himself as Raymond Shortt.  The SA subsequently pulled DMV photographs of defendant and determined that

the individual who had identified himself as Shortt was, in fact, defendant.

c.    *Defendant is not a United States Citizen*

Defendant is not a United States citizen.    Defendant is a German national and legal permanent resident.    Although Germany has an extradition treaty with the United States, Germany will not extradite German citizens.    See Article 7 of Extradition Treaty with the Federal Republic of Germany (Ex. C.)

d.    *Defendant's weak ties to this District*

As set forth in the affidavit, although defendant has a home in this District, defendant does not have a California driver's license. Instead, defendant has a Connecticut driver's license.

A person believed to be defendant's wife resides in Connecticut. A person believed to be defendant's girlfriend resides in Texas.

e.    *Defendant's extensive foreign and domestic travel*

Defendant travels internationally extensively.    Indeed, defendant traveled to Germany with a female companion a few weeks ago on or about July 2, 2017, returning to the United States on or about July 14, 2017.    (See Ex. D.)    This was not defendant's first trip to Germany this year, nor was it defendant's first international trip.

f.    *Defendant's overseas financial accounts*

As noted in the affidavit, a July 2017 FBI forensic accounting of accounts in the name of defendant, StarClub, and StarClub affiliates which received investor funds, reveals that some investor funds were sent to a trust in the Bahamas.    The ability to access foreign monetary resources provides additional incentive and means to defendant to flee.

5

**III. CONCLUSION**

For the foregoing reasons, the government submits no condition or combination of conditions will reasonably assure the appearance of defendant as required and respectfully requests that this Court order that defendant be detained while awaiting trial pursuant to 18 U.S.C. § 3142(a)(4), (e).