GINGER R. KELLEY (Bar No. 158292)
Law Offices of Ginger R. Kelley
4121 Westerly Pl., Suite 101
Newport Beach, CA 92660
Telephone: (714) 379-8311
Facsimile: (714) 379-8312
E-mail: kelleylaw1@aol.com

Attorney for Defendant,
BERNHARD EUGEN FRITSCH

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 17-CR-00520-DSF |
|---|---|
| Plaintiff, | **DEFENDANT BERNHARD EUGEN FRITSCH'S MOTION FOR AN ORDER MODIFYING CONDITION OF RELEASE (2.K) TO REMOVE LOCATION MONITORING DEVICE (18 U.S.C. § 3142(c)(3).)** |
| v. | |
| BERNHARD EUGEN FRITSCH, | |
| Defendant. | **Date: September 13, 2021** <br> **Time:  8:30 a.m.** <br><br> [Proposed Order Lodged Concurrently Herewith] |

Notice is hereby given that Defendant, Bernhard Eugen Fritsch, by and through his counsel, Ginger R. Kelley, hereby motions this Court pursuant to 18 U.S.C. § 3142(c)(3) for an order modifying the terms of his release to remove the Location Monitoring Device as a condition of release.

This motion is based on the attached declaration of counsel, all files and records in this case, argument in support of this motion and such further information as may be provided to the Court.

---

*MOTION FOR MODIFICATION OF TERM OF RELEASE - LOCATION MONITORING*

Mr. Fritsch's current and former Pre-Trial Services Officers and his Location Monitor Officer support this request in light of his perfect compliance over the past nearly 4 years.  The Government takes no position on this request.

Respectfully Submitted,

Dated: August 13, 2021          By  */s/ Ginger R. Kelley*
                                Ginger R. Kelley
                                Attorney for Defendant
                                Bernhard Eugen Fritsch

*MOTION FOR MODIFICATION OF TERM OF RELEASE - LOCATION MONITORING*

# ARGUMENT

## REMOVING THE CONDITION OF RELEASE REQUIRING THE LOCATION MONITORING DEVICE IS JUSTIFIED AND PROPER BASED UPON A CHANGE IN CIRCUMSTANCES

Mr. Fritsch, by way of this motion, seeks to terminate the Location Monitoring Device condition of his release. [Dkt. 48, paragraph 2.K; Exhibit A][1]  This request has the blessing of Mr. Fritsch's long-time Pretrial Services Officer Allyson Theophile (retired effective July 30, 2021), Ms. Theophile's Supervisor  (Mr. Fritsch's current Pretrial Services Officer) Devona Gardner, and Mr. Fritsch's Location Monitoring Officer Manny Ibanez. According to Agent Theophile, the continuation of Location Monitoring ("LM") for Mr. Fritsch seems "punitive" in light of nearly four years of perfect compliance with the terms of his release and his proven trustworthiness traveling outside of California and internationally over the past 3 years.  (Exhibit B) The condition no longer falls into the category of "least restrictive condition" necessary to "reasonably assure" the defendant's appearance and the safety of the community. 18 U.S.C. § 3142(c)(1)(B).  The Government takes no position on this request.

Pretrial Location Monitoring is authorized by statute under 18 U.S.C. §3563, subsection (b).  As it relates to Mr. Fritsch, the purpose is to ensure that he resides and remains within the jurisdiction of the court given his status as a German national.  Mr. Fritsch has also surrendered his passport.  Mr. Fritsch was granted release on various terms and conditions in December 2017, including that he wear a LM device. (Dkt. 48, 66, paragraph 2(K).)  The device that Mr. Fritsch is required to wear is approximately the size of *two decks of playing cards*, due to the size of the property on which he is living. (Exhibit C)

---

[1] This request was made via an *ex parte* application by prior counsel on November 10, 2020. (Dkt. 146.)  This Court denied said request without prejudice indicating a noticed motion stating the reasons for the request were necessary. (Dkt. 147.)

*MOTION FOR MODIFICATION OF TERM OF RELEASE - LOCATION MONITORING*

Since March of 2018, the court has granted all of Mr. Fritsch's eight requests to travel for purposes of employment, both within the United States and in Europe. (Dkts. 80, 82, 92, 100, 102, 105, 107, 117, 125.)  The Court permitted Mr. Fritsch to obtain a new passport in 2019 to travel to Europe for business for approximately three weeks. Upon his timely return, he promptly surrendered that passport to LM Officer Ibanez as ordered. (Dkt. 125.)  He is currently permitted to travel to San Francisco, New York and Washington, DC with just the permission of his LM Officer. Each time he travels anywhere else, he must obtain a court order.  Each time he travels, Mr. Fritsch is permitted to remove the device one hour prior to travel and, upon return, have the device replaced.  As has been indicated in every request made to this Court regarding travel, Mr. Fritsch has always been in full compliance with all of the conditions of his release and has always returned in a timely fashion.  Agent Theophile cited this as the reason LM is no longer necessary. There have been many changes in Mr. Fritsch's conditions of release over the years that were agreed upon by the Government.  Circumstances have changed since his release; Mr. Fritsch has proven to the agents and to the Court that he can be trusted and is not a flight risk and his appearance is secure.  Based on the numerous existing conditions and the available sanctions for violating said conditions, Mr. Fritsch's appearance is "reasonably assured" as set forth in §3142 in the absence of the LM condition. See also *United States v. Xulum*, 84 F.3d 441, 443 (D.C. Cir. 1996)(per curiam).

According to the United States District Court's Services and Forms, Chapter 3: Location Monitoring (Probation and Supervised Release Conditions), Subdivision C [https://www.uscourts.gov/services-forms/location-monitoring-probation-supervised-release-conditions], a purpose of Location Monitoring is "public protection" which enables Pretrial Services to keep informed of the conduct of the defendant as set forth in 18 U.S.C. §§ 3603(2)-(3).  LM, particularly in the pretrial setting when a defendant is presumed innocent, allows defendants to work to support their families, pay taxes and maintain prosocial bonds.  (See: Chapter 1, Section III (A)(3)).  This current LM condition is

4

actually having the opposite effect and is actually hindering his ability to work and maintain prosocial bonds.

Agents are encouraged by way of court policy to periodically evaluate the usefulness and necessity of technology use.  Consistent with this policy, Agent Theophile has opined that the LM is no longer necessary to meet the purposes it was originally intended to address. ("Location monitoring technology should be dynamic in that probation officers should consistently evaluate the need for the technology, the level of monitoring, and the type of technology used or recommended.") [https://www.uscourts.gov/services-forms/location-monitoring-probation-supervised-release-conditions, Ch. 3.D.5.]  Over the course of nearly four years of pretrial use, considerations have changed and the device is no longer serving a positive purpose and has, instead, become punitive.   ["The least invasive and most cost-effective type of technology should be recommended based on the nature of the offense, criminal history, and the defendant's risk level. Location monitoring technology can create supervision efficiencies by providing a better allocation of time and therefore avoid under-supervising high-risk defendants and avoid over-supervising low-risk defendants."]

Mr. Fritsch has proven over the course of several years, after many opportunities to prove otherwise, that he is not a flight risk. Further, while Mr. Fritsch is awaiting trial on a serious matter, he is presumed innocent. He is not a danger to the community and he has never suffered an arrest, accusation or conviction prior to the matter for which he stands accused.  He has absolutely no history of violence. The need for pretrial use of LM at this stage is far outweighed by the negative consequences of remaining on LM.  Mr. Fritsch has suffered setbacks to his health status, his financial status, his working relationships and his social standing.

Prior to being charged in this matter, Mr. Fritsch was in extremely good health.  He was an avid swimmer, tennis player, golfer, skier and he exercised regularly.  As indicated previously, the LM device attached to his leg is the size of two decks of cards.  It is heavy,

*MOTION FOR MODIFICATION OF TERM OF RELEASE - LOCATION MONITORING*

awkward, painful and he is unable to swim, run, ski or do any of the other physical activity he previously performed.  The device causes periodic rashes on his legs. (Exhibit D) He cannot go out in shorts in public for fear of causing concern or anxiety in others that see the device and/or humiliation for himself.  Since his release, Mr. Fritsch has gained approximately 60 pounds, has developed high blood pressure and high cholesterol, and is prediabetic as a result of not being able to exercise. (Exhibit E) These activities were also, in large part, Mr. Fritsch's opportunity to develop business, spend time with his two young boys, spend time with friends and otherwise develop and maintain "prosocial" bonds. The impact of all of this has caused Mr. Fritsch to suffer depressive episodes.

Additionally, Mr. Fritsch was not advised of any long-term effects the LM device might have. It is assumed, however, the large LM unit attached to Mr. Fritsch is not generally made for long term use. Since the beginning of 2019, Mr. Fritsch has suffered periodic neural tremor or vibration episodes in his shinbones and femurs that last anywhere from 4-10 days.  When the episode begins, it eventually travels from one leg to the other, regardless of which leg the LM device is mounted. The symptoms of the tremor, he reports, are within a low-frequency range between 20 and 40 Hz.  Because he was without insurance for a period of time, and because the discomfort comes and goes, he has not consulted a neurologist yet. The episodes are extremely uncomfortable and temporarily debilitating, however.

The LM device additionally precludes Mr. Fritsch from entering any sort of building or area that is secure without having the device go off.  In the technology field in which he works, many of the areas he frequents are secure and he cannot enter. This severely limits his ability to work and he has been declined work opportunities specifically as a result of wearing the LM device.  Further, he is unable to do things like pick up his minor children at the airport.  His two minor sons live in Arizona and Connecticut and usually spend about 30% of the year with Mr. Fritsch.  However, he is not even permitted to be near an airport, so he cannot pick them up, meet them at the baggage claim, or drop them at the gate when

they leave. His lack of physical mobility and his lack of ability to do many things have created a distance between Mr. Fritsch and his two youngest boys.

With regard to employment opportunities, the LM device is a physical barrier to doing business.  He cannot go into secure buildings, or meet in areas he is not permitted to be in. He cannot meet potential clients in places like restaurants or golf courses or other areas where he could lose service or lose charge. On several occasions he has been in meetings when the device needed charging, causing it to beep persistently and requiring him to disclose the device and ask that he be able to charge while he sat next to the electrical outlet. Further, many of the physical activities he used to engage in were opportunities to cultivate relationships. The nature of his work and the status of his clients often necessitate meetings outside of an office setting. The presence of the large LM device precludes this. The amount of income loss is difficult to estimate, but it is substantial.

Finally, the service is costly at $126.17 per month. When LM began nearly four years ago, Mr. Fritsch could not have imagined the financial toll the accusation in this case would have on him. Since 2017, he has been periodically renting out his primary residence just to make money to cover living expenses, the mortgage and other bills. He has turned down several recent employment opportunities due to a need for clarification of Term 2.f, which is the subject of another motion before this court.  He has been effectively stripped of all discretionary funds while also unable to secure many income generating opportunities.

Mr. Fritsch is keenly aware of the sanctions this Court can impose should he violate the terms of his release.  He has followed the terms of his release and has earned the trust of his Pretrial Services officers. The terms of his release include an order to "actively seek employment" and that term is frustrated by the continued use of the LM device.

## CONCLUSION

The LM device is no longer a necessary term of Mr. Fritch's release.  While it made sense nearly four years ago when his appearance was not secure and his flight risk

unknown, circumstances have changed. His appearance is secured by a variety of bond conditions, he has proven he is not a flight risk, and what may have been a necessary term four years ago has become a punitive term today.  Mr. Fritsch respectfully requests the Court modify the terms of his release and remove the LM device.

Respectfully submitted,

Dated:  August 13, 2021

By */s/ Ginger R. Kelley*
Ginger R. Kelley
Attorney for Defendant
Bernhard Eugen Fritsch

*MOTION FOR MODIFICATION OF TERM OF RELEASE - LOCATION MONITORING*

## DECLARATION OF COUNSEL

I, Ginger R. Kelley, hereby declare as follows:

1.     I am an attorney admitted to practice in the Central District of California. I represent defendant Bernhard Eugen Fritsch in this matter. I make this declaration in support of Mr. Fritsch's application for an order modifying the terms of his release to remove the Location Monitoring Device requirement.

2.     On November 30, 2017, the Court ordered Mr. Fritsch released on bond under various conditions, including that Mr. Fritsch seek employment and make all of his mortgage and property tax payments. (Dkt. 48, ¶2(e)-(f).) The Court further ordered that Mr. Fritsch participate in the Location Monitoring Program and abide by all of the requirements of the program, including a location monitoring bracelet. (Dkt.48, ¶2(k).)

3.     On eight prior occasions – March 30, 2018, May 7, 2018, June 29, 2018, September 27, 2018, November 21, 2018, November 28, 2018, January 23, 2019, and June 6, 2019 through June 24, 2019  – the Court issued an order permitting Mr. Fritsch to travel to pursue work opportunities, including a trip to Europe. The Court additionally allowed Mr. Fritsch to apply for a new passport in order to travel, which was promptly surrendered to the United States Pretrial Services upon his timely return to the United States. (Dkts. 80, 82, 92, 100, 102, 105, 107, 117, 125.)

4.     This request was made via an ex parte application by prior counsel on November 10, 2020. (Dkt. 146.) This Court denied said request without prejudice indicating a noticed motion stating the reasons for the request were necessary. (Dkt. 147.)

5.     I have spoken to Mr. Fritsch's former Pretrial Services Officer, Allyson Theophile who expressed support for this request indicating that after 4 years Mr. Fritsch has proven himself trustworthy and that continued use of Location Monitoring Device seems "punitive." Ms. Theophile retired last week on 7/30/21 and was replaced by her Supervisor Devona Gardner. Ms. Gardner indicated she has no opposition to this motion based upon Mr. Fritsch's stellar record of compliance.

9

*MOTION FOR MODIFICATION OF TERM OF RELEASE - LOCATION MONITORING*

6.    I have conferred with Mr. Fritsch's Pretrial Services Officer, Manuel Ibanez, who has confirmed that Mr. Fritsch is in full compliance with every aspect of the bond order since his release.  Officer Ibanez informed me that he has no objection to the relief requested in this application just as he had no objection to the previous request.

7.    I have spoken with Assistant United States Attorney Monica Tait regarding the government's position regarding the relief requested in this application.  Ms. Tait has stated that the government takes no position on this request.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Dated:  August 13, 2021                    */s/ Ginger R. Kelley*
                                           Ginger R. Kelley

---

10

***MOTION FOR MODIFICATION OF TERM OF RELEASE - LOCATION MONITORING***