E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
MONICA E. TAIT (Cal. Bar No. 157311)
SARAH S. LEE (Cal. Bar No. 311480)
JOSEPH DE LEON (Cal. Bar No. 313471)
Assistant United States Attorneys
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2931/7407/7280
     Facsimile: (213) 894-6269
     E-mail:    monica.tait@usdoj.gov
                sarah.lee@usdoj.gov
                joseph.de.leon@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 17-00520-DSF |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION *IN LIMINE* #2 TO ADMIT EVIDENCE OF DEFENDANT'S POST-ARREST ATTEMPT TO SELL HIS MCLAREN AND ROLLS ROYCE; EXHIBITS |
| v. | |
| BERNHARD EUGEN FRITSCH, | Hearing Date: December 30, 2024 |
| Defendant. | Hearing Time: 8:30 AM |
| | Location:    Courtroom of the Hon. Dale S. Fischer |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Monica E. Tait, Sarah S. Lee, and Joseph De Leon, hereby files its motion in limine #2 to admit evidence of defendant's attempt to sell his McLaren and Rolls Royce after learning they were subject to criminal forfeiture.

This motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Pursuant to the Court's standing order, the government has met and conferred with defense counsel regarding this motion.

Dated: December 2, 2024

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


_____/s/_____
SARAH S. LEE
MONICA E. TAIT
JOSEPH DE LEON
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

TABLE OF AUTHORITIES................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION.................................................1

II.   STATEMENT OF FACTS..........................................2

      A.    Defendant's Scheme to Defraud.........................2

      B.    Defendant's Purchase of a 2015 McLaren 650S Spyder....2

      C.    Defendant's Purchase of a 2016 Rolls Royce Dawn.......4

      D.    Defendant Attempted to Liquidate his Fraud Proceeds,
            in the Form of these Luxury Vehicles, After His Arrest....6

III.  ARGUMENT....................................................8

      A.    Defendant's Attempt to Sell the McLaren and Rolls
            Royce is Inextricably Intertwined with the Charged
            Conduct...............................................8

      B.    The Evidence Is Also Admissible Under Rule 404(b)....10

      C.    The Probative Value of the Evidence is Not
            Substantially Outweighed by Prejudice................13

IV.   CONCLUSION.................................................14

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

Cases

United States v. Arambula-Ruiz,
   987 F.2d 599 (9th Cir. 1993) ....................................... 12
United States v. Ayers,
   924 F.2d 1468 (9th Cir. 1991) ................................. 10, 11
United States v. Blitz,
   151 F.3d 1002 (9th Cir. 1988) ..................................... 13
United States v. Dorsey,
   677 F.3d 944 (9th Cir. 2012) ....................................... 8
United States v. Freeman,
   6 F.3d 586 (9th Cir. 1993) ......................................... 9
United States v. Jimenez-Chaidez,
   96 F.4th 1257 (9th Cir. 2024) ..................................... 11
United States v. Johnson,
   132 F.3d 1279 (9th Cir. 1997) ..................................... 13
United States v. Romero,
   282 F.3d 683 (9th Cir. 2019) ...................................... 12
United States v. Vizcarra-Martinez,
   66 F.3d 1006 (9th Cir. 1995) ..................................... 8, 9
United States v. Vo,
   413 F.3d 1010 (9th Cir. 2005) ..................................... 12
United States v. Williams,
   989 F.2d 1061 (9th Cir. 1993) ...................................... 8

Statutes

18 U.S.C. § 1957............................................ 1, 4, 6, 7, 8

Rules

Fed. R. Evid. 404(b).............................................. 10

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Defendant Bernhard Eugen Fritsch is charged with wire fraud and money laundering in connection with an investment fraud scheme.  The indictment alleges defendant solicited investments for his company, StarClub, and represented the funds would be used for corporate purposes.  Evidence at trial will show that defendant caused approximately $7.9 million of investor funds to be transferred to other accounts controlled by defendant.  Defendant then used the money to fund his lavish lifestyle, including the purchase of a McLaren, the purchase of a Rolls Royce, expenses for his yacht, and expenses for his mansion in Malibu.

Counts Three and Four of the indictment pertain specifically to defendant's purchase of the McLaren and Rolls Royce.  These counts allege that defendant knowingly conducted monetary transactions with proceeds of wire fraud in connection with his purchase of the McLaren (Count Three) and the Rolls Royce (Count Four), in violation of 18 U.S.C. § 1957.

After being arrested on a criminal complaint in this matter on August 2, 2017, defendant was temporarily detained.  While in custody, defendant caused a letter to be delivered to his driver and estate manager, George Mederos.  In the letter, defendant directed Mr. Mederos to sell the McLaren and Rolls Royce.  (**Exhibit A.**)

Defendant's letter, along with witness testimony regarding the circumstances under which Mr. Mederos received the letter, is evidence that is inextricably intertwined with the charged conduct. Alternatively, the evidence is admissible under Federal Rule of

Evidence 404(b) to show defendant's knowledge and intent.  The government moves to admit this evidence in its case-in-chief.

## II.    STATEMENT OF FACTS

### A.    Defendant's Scheme to Defraud

Defendant ran StarClub, Inc. ("StarClub"), a company that claimed to develop computer software applications that would assist social media influencers, including celebrities, in monetizing their brand endorsements.  (CR 1 (Complaint) at 5, 7.)  Between January 2014 and December 2016, StarClub raised approximately $35 million from investors.  The indictment alleges that defendant solicited investors for StarClub, falsely claiming that StarClub had numerous patents issued in its name; that well-known companies were on the verge of acquiring part or all of StarClub, or were planning commercial partnerships with the company, or were current StarClub investors; and that StarClub had generated $15 million in revenue in 2015, and had spent $90 million on technology development.  (CR 19 at 3-5.)  In fact, the indictment alleges, these claims were false and fraudulent, and moreover, defendant caused approximately $7.9 million to be transferred to non-StarClub accounts controlled by defendant and others to pay for personal, non-business expenses, including the purchase of luxury cars.  (Id. at 4-5.)

### B.    Defendant's Purchase of a 2015 McLaren 650S Spyder

Evidence at trial will show that in January 2015, defendant used investor funds to purchase a McLaren for $292,510 from the McLaren Scottsdale dealership in Arizona.  The photograph below (seized from defendant's personal phone, as the evidence at trial will show) depicts defendant with the McLaren:



Evidence at trial will show that defendant created a holding company, Greenwich Music, LLC,[1] which he incorporated in Missoula, Montana, to purchase the McLaren.  To incorporate the company and effectuate the purchase, defendant hired an attorney, John Bennett of Bennett Law.  George Mederos, defnedant's driver and estate manager, is expected to testify that defendant directed Mr. Mederos to communicate with Bennett Law and McLaren Scottsdale to coordinate the purchase of the McLaren.

The evidence will show that in January 2015, several transfers involving investor funds were made for the purchase of the McLaren. For example, on or around approximately January 20, 2015, defendant first directed the transfer of $20,000 from a StarClub bank account

---

[1] Defendant also had another company called Greenwich Music, Inc., which is a Delaware company.

3

that contained investor funds to a Wells Fargo bank account he controlled and which he opened under the name of a company named after his Malibu mansion, 3229 Rambla Pacifico Inc. (the "Rambla Pacifico x7568 account").  One day later, on January 21, 2015, defendant then directed the transfer of the same amount, $20,000, from the Rambla Pacifico x7568 account to McLaren Scottsdale, as a portion of the purchase price for this car.  Count Three of the indictment charges that this "[t]ransfer of $20,000 from the Rambla Pacifico x7568 Account to McLaren Scottsdale for the purchase of a 2015 McLaren 650S Spyder in the name of Greenwich Music LLC, a company created at the direction of defendant FRITSCH and his co-schemers" constituted a violation of 18 U.S.C. § 1957.  While evidence at trial, including the purchase documents and testimony from Mr. Mederos, will show that defendant, who resided in California, was the true owner of the McClaren, the vehicle was titled in Montana under the name of the name of the straw company (Greenwich Music LLC).

**C.    Defendant's Purchase of a 2016 Rolls Royce Dawn**

Evidence at trial will also show that defendant used investor funds to purchase another luxury car, a 2016 Rolls Royce Dawn, for $405,973.07.

The photograph below (from defendant's personal phone) depicts defendants with the Rolls Royce:

//

//

4



The evidence will show that in approximately August 2016, defendant directed Mr. Mederos to assist with the purchase of the Rolls Royce, including communicating with Bennett Law to purchase the car using the Greenwich Music, LLC holding company.  The evidence will further show that beginning in August 2016, several transfers of investor funds were made for the Rolls Royce.  On August 1, 2016, defendant directed the transfer of $50,000 from a StarClub bank account that contained investor funds to another 3229 Rambla Pacifico account, this one at JP Morgan Chase (the "Rambla Pacifico x6803 account").  Then on August 8, 2016, defendant directed a wire transfer of $30,000 from the Rambla Pacifico x6803 account to the Rusnak/Pasadena car dealership as part of the purchase price of the Rolls Royce.  While evidence at trial, including the purchase

5

documents and testimony from Mr. Mederos, will show that defendant in California was the true owner of the Rolls Royce, the vehicle was titled in Montana under the name of his straw company, Greenwich Music LLC.  Count Four of the Indictment charges that this "[t]ransfer of $30,000 from the Rambla Pacifico x6803 Account to Rusnak/Pasadena for the purchase of a 2016 Rolls-Royce Dawn in the name of Greenwich Music, LLC, a company created at the direction of defendant FRITSCH and his co-schemers," constituted a violation of 18 U.S.C. § 1957.

### D.    Defendant Attempted to Liquidate his Fraud Proceeds, in the Form of these Luxury Vehicles, After His Arrest

On August 2, 2017, the government filed a criminal complaint against defendant.  (CR 1.)  The following day, defendant was arrested and detained.  (CR 6.)  On August 24, 2017, defendant appeared for his arraignment, during which he was given a copy of the indictment.  (CR 25.)  As explained above, the indictment explicitly charges defendant with transactional money laundering in connection with his purchase of his McLaren and Rolls Royce.  The indictment also notified defendant that the government sought criminal forfeiture of any property traceable to the money laundering counts. (CR 1 at 9-10.)

On September 6, 2017, special agents from the FBI went to defendant's Malibu mansion to seize, pursuant to warrants, the McLaren and Rolls Royce.  (**Exhibit B.**)  Special Agent ("SA") Greg Austin is expected to testify that he met with Mr. Mederos, who was present at defendant's home, and conducted an interview of Mr. Mederos.  (Id.)  During the interview, in the agent's presence, Brett Deforest Maxwell, an attorney representing defendant, delivered a

6

letter from defendant to Mr. Mederos.  (Id.)  Although SA Austin declined to take a copy of the letter (proffered then by Mr. Mederos) that same day, Mr. Mederos later provided copies.  (**Exhibit C.**)

On September 18, 2017, agents spoke with Mr. Mederos again and received copies of the letter Mr. Mederos received from defendant's attorney on the day of the vehicle seizures, along with other communications Mr. Mederos had received from defendant.  (**Exhibit C; Exhibit A.**)

The letter from defendant, dated September 5, 2017, contains the following statements as relevant to this motion:

- "I am writing bc of my case."
- "Here I like to consult with you regarding the two vehicles RR + McL."
- "After reviewing the process and all things considered, the owner made a decision to sell both vehicles at the earliest convenience at CARMAX or comparable."
- "Here the proceeds shoul (sic) go to the attorney trust account of the Bennett law firm in Montana."
- "Same law firm should open a safe bank account to deposit the funds there."
- "Of course if there is a safe bank account in place then the proceeds could go directly there."

(**Exhibit A.**)

At trial, Mr. Mederos and SA Austin are expected to testify that defendant's letter, **Exhibit A**, was delivered to Mr. Mederos on September 6, 2017 in the presence of SA Austin by attorney Brett Deforest Maxwell (in a furtive manner, according to Mr. Mederos). (**Exhibit D at 5.**)  Records or testimony from the Bureau of Prisons

will show that on this date, defendant was in custody (and therefore unable to liquidate his assets).  Mr. Mederos is further expected to testify that he provided a copy of the letter to special agents and that he recognizes the handwriting as defendant's.  (**Exhibit C; Exhibit D at 5.**)  Mr. Mederos is also expected to testify that he understands "RR" in the letter to refer to the Rolls Royce, and "McL" to refer to the McLaren.  (Id.)  Finally, Mr. Mederos is expected to testify that he understands "the Bennett law firm" to refer to the law firm that defendant used to purchase the Rolls Royce and McLaren. (Id.)

**III. ARGUMENT**

     **A.    Defendant's Attempt to Sell the McLaren and Rolls Royce is Inextricably Intertwined with the Charged Conduct**

Evidence of a defendant's other acts "may be 'inextricably intertwined' with a charged crime and thus exempted from the requirements of Rule 404(b)" if either: (1) the "other act evidence … 'constitute[s] a part of the transaction that serves as the basis for the criminal charge'"; or (2) "admission of other act evidence [is] 'necessary . . . to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'"  United States v. Dorsey, 677 F.3d 944, 951 (9th Cir. 2012) (quoting United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012–13 (9th Cir. 1995)).

The first avenue for admissibility assures that uncharged acts do not become Rule 404(b) evidence "simply because the defendant 'is indicted for less than all of his actions.'"  United States v. Williams, 989 F.2d 1061, 1070 (9th Cir. 1993) (quotation omitted). The second avenue permits the government to "explain either the circumstances under which particular evidence was obtained or the

events surrounding the commission of the crime," which is often necessary because the jury "cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." Vizcarra-Martinez, 66 F.3d at 1013 (quotation omitted); cf. United States v. Freeman, 6 F.3d 586, 599 (9th Cir. 1993) (affirming admission of testimony about inextricably intertwined acts even though they "easily could have been excised without preventing the Government from putting the testimony in context").

Defendant's attempt to liquidate his Rolls Royce and McLaren -- shortly after he received notice that these cars formed the basis of charges in the indictment -- is inextricably intertwined with those counts.  To prove the money laundering counts, the government must show defendant knowingly engaged or attempted to engage in the monetary transactions charged, which expressly include transactions to purchase the Rolls Royce and the McLaren.  To tell a full and complete story about defendant's control over these transactions, the government should be entitled to explain not only how defendant used investor funds to purchase the cars through a holding company that he incorporated and controlled (which actions kept his name off the title), but also that defendant exercised control over the cars by directing Mr. Mederos to sell the cars when he learned they were subject to criminal forfeiture.  Such evidence shows that defendant controlled the purchase of the cars and continued to exercise control over the cars after the charges were brought in this case, even though he had taken pains to keep title to the cars out of his own true name.  In short, defendant at all times exercised ownership over these cars, which supports the government's case that defendant

knowingly directed the monetary transactions leading to the purchases of the cars.

Evidence of defendant's ownership and control of the cars is particularly important to tell a cohesive story because the cars were purchased in a manner that obfuscates the defendant's own involvement. As explained above, defendant hired a law firm, Bennett Law, to incorporate a Montana holding company and purchased the cars in the company's name, rather than in his own name. Further, defendant enlisted Mr. Mederos to communicate with Bennett Law and the car dealerships to purchase the cars for defendant. Evidence of defendant's letter, including references to himself in the third person as "the owner" who "made a decision to sell both vehicles," and the reference to sale proceeds going "to the attorney trust account of the Bennett law firm in Montana," show defendant was the true owner of these cars and hence supports the government's proof that defendant directed the manner in which they were purchased and hence caused the money laundering transactions charged in Counts Three and Four. The evidence is therefore particularly relevant for the jury to consider in determining whether defendant knowingly engaged in the monetary transactions to purchase the cars.

### B.   The Evidence Is Also Admissible Under Rule 404(b)

Under Federal Rule of Evidence 404(b), evidence of other acts is admissible when offered for a proper purpose, including to show intent and knowledge. Fed. R. Evid. 404(b). Rule 404(b) is "a rule of inclusion." United States v. Ayers, 924 F.2d 1468, 1472 (9th Cir. 1991). "Evidence of other crimes or acts is admissible under Rule 404(b), 'except where it tends to prove only criminal disposition.'" Id. at 1473 (citations omitted) (emphasis in original).

10

The Ninth Circuit has a four-part test to determine the admissibility of evidence under Rule 404(b): "(1) it must tend to prove a material issue; (2) the [other] acts must not be too remote in time; (3) there must be sufficient evidence for a reasonable jury to conclude that defendant committed the [other] acts; and (4) when used to show knowledge and intent, the [other] acts must be sufficiently similar to the charged offense." United States v. Jimenez-Chaidez, 96 F.4th 1257, 1264 (9th Cir. 2024).  Evidence that defendant attempted to sell the McLaren and Rolls Royce is admissible under Rule 404(b).

These requirements are met here.  First, the evidence tends to prove a material issue -- defendant's intent and knowledge.  The fact that defendant believed he owned and exercised control over the disposition of his McLaren and Rolls Royce tends to show that defendant intended to and knowingly engaged in the purchase of the cars in the first place.  Although defendant's attempt to sell the cars came after the commission of the monetary transactions charged in the indictment, evidence of subsequent acts is still admissible to prove intent.  Ayers, 924 F.2d at 1472-74 (upholding admission of subsequent-act evidence to prove intent to conceal income and evade taxes).

Second, the evidence is not too remote in time.  As explained above, defendant bought the McLaren in January 2015 and the Rolls Royce in August 2016.  Then in September 2017, defendant attempted to sell these cars after learning they were subject to criminal forfeiture.  Mr. Mederos is expected to testify that defendant was the sole person in control of the vehicles between their purchase and the time of his arrest on August 2, 2017.  The Ninth Circuit has

11

repeatedly held that evidence far more remote in time is admissible under Rule 404(b).  See, e.g., United States v. Vo, 413 F.3d 1010, 1018 (9th Cir. 2005) (thirteen-year-old conviction was not too remote to be admitted).

Third, there is sufficient evidence to conclude defendant attempted to sell his McLaren and Rolls Royce.  There is a "low threshold" to establish defendant committed the other act.  United States v. Romero, 282 F.3d 683, 689 (9th Cir. 2019).  Here, the government anticipates introducing testimony from Mr. Mederos and SA Austin, as well as a copy of the letter itself, to describe the circumstances under which Mr. Mederos received the letter from defendant directing him to sell the cars.  Further, the government anticipates Mr. Mederos will testify that, having worked for defendant as his estate manager for approximately five years, he is familiar with defendant's handwriting, which appears on the letter.  Mr. Mederos will also be able to interpret defendant's coded references in the letter to the McLaren, Rolls Royce, and the Bennett Law firm, based on his personal knowledge of the purchase of the vehicles using that firm.

Finally, the evidence is sufficiently similar to the charged offense.  As explained above, defendant's attempt to sell his cars is inextricably tied to the charged offenses because the evidence shows defendant's continued ownership of the cars and ability to control them, despite the fact that they are not titled in defendant's true name.  Moreover, when offered to show knowledge, the other act "need not be similar to the charged act as long as the [other] act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence."  United States

12

v. Arambula-Ruiz, 987 F.2d 599, 603 (9th Cir. 1993).  The evidence should be admitted under Rule 404(b) because defendant's attempt to sell the cars makes it more likely than not that he knowingly engaged in the monetary transactions to purchase the cars in the first instance, and that he knew the transactions were conducted with criminally derived proceeds based in part on the complex series of transfers undertaken at defendant's direction to purchase the cars.

**C.    The Probative Value of the Evidence is Not Substantially Outweighed by Prejudice**

While all unfavorable evidence against a defendant may be prejudicial to some extent, Rule 403 only excludes evidence that is unfairly prejudicial.  See United States v. Blitz, 151 F.3d 1002, 1009 (9th Cir. 1988) ("[E]ven if . . . 404(b) evidence resulted in some prejudice (and all unfavorable evidence about a defendant does), it was not 'unfair prejudice' and did not 'substantially outweigh' the high probative value of the evidence.").  When considering 404(b) evidence in light of Rule 403, "'the district court should admit the evidence unless its prejudicial impact substantially outweighs its probative value."  Id., at 1008 (quoting United States v. Johnson, 132 F.3d 1279, 1282 (9th Cir. 1997)).

The probative value of the evidence is significant.  It tends to show defendant purchased the cars, continued to exercise ownership and control over the cars, and caused the transactions charged in Counts Three and Four.  It also tends to support Mr. Mederos' expected testimony, and the car dealership records, showing defendant knew of and directed the Bennett Law firm to effectuate the purchases, as the letter reveals he believed the law firm  could also assist with handling the proceeds of the sale of the cars.

13

On the other hand, the risk of prejudicial impact is minimal. The jury will separately hear evidence from Mr. Mederos, see the car dealership business records, and view the bank record evidence supporting the proof that defendant used investor funds to purchase the cars. The additional prejudice of evidence showing defendant also tried to sell them is minimal. Further, the evidence will not take significant time to present. The testimony can be introduced through the testimony of Mr. Mederos and FBI agents who are already expected to testify at trial for other purposes, and the letter itself is only two pages long. Further, the evidence is straightforward and there is no risk it will create confusion or mislead the jury. Rule 403 therefore presents no bar to the admissibility of this evidence.

**IV.    CONCLUSION**

For the foregoing reasons, the government requests this Court admit evidence of defendant's attempt to sell his McLaren and Rolls Royce after learning they were subject to criminal forfeiture.

14

The undersigned, counsel of record for the United States of America, certifies that this brief contains 3,356 words, which complies with the word limit of L.R. 11-6.1.


Dated: December 2, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


_____/s/ *Sarah S. Lee*_____
Joseph De Leon
Sarah S. Lee
Monica E. Tait
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA