CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
JAMES S. THREATT (Bar No. 325317)
(E-Mail: jimmy_threatt@fd.org)
REBECCA ABEL (Bar No. 298604)
(E-Mail: rebecca_abel@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
BERNHARD EUGEN FRITSCH

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>BERNHARD EUGEN FRITSCH,<br><br>　　　　Defendant. | Case No. 17-CR-00520-DSF<br><br>**DEFENDANT BERNHARD EUGEN FRITSCH'S OPPOSITION TO GOVERNMENT MOTION *IN LIMINE* #3** |

i

Defendant Bernhard Eugen Fritsch, by and through his counsel of record Deputy Federal Public Defenders James S. Threatt and Rebecca Abel hereby files this opposition to the Government's motion *in limine* #3.

This opposition is based on the attached memorandum of points and authorities, the attached exhibits, the lodged audio files, all files and records in this case, and any argument presented at any hearing on this matter.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  December 9, 2024

By   */s/ Rebecca M. Abel*

REBECCA ABEL
JAMES S. THREATT
Deputy Federal Public Defenders
Attorney for BERNHARD EUGEN FRITSCH

ii

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................... 1

II. ARGUMENT ......................................................................................................... 1

    A.    The August 2, 2017 Interrogation of Mr. Fritsch Is Inadmissible ............... 1

        1.    Miranda warnings were required. ....................................................... 1

        2.    The government cannot meet its burden to demonstrate waiver. ....... 3

    B.    The May 24, 2017 recordings must be excluded at trial. ........................... 7

        1.    The recordings are incomprehensible. ................................................ 7

        2.    The recordings are irrelevant and violate Rule 403 .......................... 8

    C.    The defense is entitled to provide counter-designations .......................... 10

III. CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berghuis v. Thompkins*,
  560 U.S. 370 (2010)......................................................................................7

*Bonin v. California*,
  494 U.S. 1039 (1990)....................................................................................8

*Fare v. Michael C.*,
  442 U.S. 707 (1979)......................................................................................8

*McMann v. Richardson*,
  397 U.S. 759 (1970)......................................................................................8

*Mickens v. Taylor*,
  535 U.S. 162 (2002)..................................................................................8, 10

*Miranda v. Arizona*
  384 U.S. 436 (1966)............................................................................4, 5, 6, 8

*Thompson v. Keohane*,
  516 U.S. 99 (1995)........................................................................................4

*United States v. Allen*,
  831 F.2d 1487 (9th Cir. 1987) ...................................................................10

*United States v. Andaverde*,
  64 F.3d 1305 (9th Cir. 1995) .......................................................................7

*United States v. Beraun-Panez*,
  812 F.2d 578 (9th Cir.) ................................................................................6

*United States v. Carroll*,
  102 F. Supp. 3d 1134 (N.D. Cal. 2015).......................................................6

*United States v. Craighead*,
  539 F.3d 1073 (9th Cir. 2008) .....................................................................5

*United States v. Crawford*,
  372 F.3d 1048 (9th Cir. 2004) .....................................................................6

*United States v. Heldt*,
   745 F.2d 1275 (9th Cir. 1984) .............................................................................7

*United States v. Kim*,
   292 F.3d 969 (9th Cir. 2002) ...............................................................................5

*United States v. Lane*,
   514 F.2d 22 (9th Cir. 1975) ...............................................................................11

*United States v. Milwitt*,
   475 F.3d 1150 (9th Cir. 2007) ...........................................................................12

*United States v. Ramirez*,
   No. 1:19-CR-02058-SMJ-4, 2020 WL 9457064 (E.D. Wash. Dec. 29,
   2020) .....................................................................................................................8

*United States v. Rodriguez*,
   518 F.3d 1072 (9th Cir. 2008) .............................................................................7

*United States v. Rogers*,
   321 F.3d 1226 (9th Cir. 2003) ...........................................................................11

*United States v. Tisor*,
   96 F.3d 370 (9th Cir. 1996) ...............................................................................11

*Wood v. Georgia*,
   450 U.S. 261 (1981)..............................................................................................9

**Other Authorities**

U.S. Const. amend. V .........................................................................................4, 7, 8

Fed. R. Evid. 403 ..............................................................................................11, 12

Fed. R. Crim. P. 801 ............................................................................................13

Fed. R. Crim. P. 803 ............................................................................................13

**MEMORANDUM OF POINTS AND AUTHORTIES**

**I. INTRODUCTION**

The government moves to introduce portions of (1) an interrogation of Mr. Fritsch conducted by FBI Special Agents immediately preceding his arrest on August 2, 2017; and (2) surreptitious recordings made by Danny Guy, at the direction of the FBI, and by an undercover FBI agent (UC) at a meeting on May 24, 2017. (Mot. 3, Dkt. No. 319.) Neither are admissible against Mr. Fritsch at trial and the defense requests exclusion.

**II. ARGUMENT**

**A.     The August 2, 2017 Interrogation of Mr. Fritsch Is Inadmissible**

**1.     Miranda warnings were required.**

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, the Supreme Court adopted prophylactic procedural measures to guarantee that a suspect is advised of his Fifth Amendment rights before custodial interrogations. 384 U.S. 436, 444–45 (1966). The government concedes that Mr. Fritsch was subject to interrogation by the FBI Special Agents during his August 2, 2017 interview. Therefore, if Mr. Fritsch was in custody at the time of the questioning, he was entitled to Miranda warnings.

Although Mr. Fritsch had not been formally arrested at the time of the questioning, a suspect is nevertheless considered "in custody" for purposes of Miranda if the suspect has been "deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. To determine whether a suspect was in custody, the court examines the totality of the circumstances surrounding the interrogation, and then asks whether a reasonable person in those circumstances would "have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

1

Here, Mr. Fritsch was in custody during the interrogation.  The three-hour interrogation occurred during the execution of the search warrant of the StarClub offices.  (Ex. J; Ex. 3 (part two of the interrogation).)[1]  Eighteen armed FBI agents raided the offices and questioned all of the employees.  (Ex. 1.)  *See United States v. Kim*, 292 F.3d 969, 977 (9th Cir. 2002) ("[T]he police in this case temporarily took over complete control of Kim's store, creating a police-dominated atmosphere[.]" (internal quotation omitted)).  SA Greg Austin and SA Eric Potocek separated Mr. Fritsch from the StarClub employees, prohibiting him from further contact with anyone.  (Mot. 3, Ex. H, Dkt. No. 319-8.)  *See Miranda*, 384 U.S. at 445 (stating that the salient feature was that the suspect was "cut off from the outside world").  Other than the SAs, the only other people Mr. Fritsch had contact with during the interrogation were two of StarClub's attorneys—Dan Johnson and Charles Sanders, neither of whom represented him as discussed below.  (Mot. 3, Ex. H.)  "[T]he law enforcement technique of isolating the suspect from family and friends is one of the distinguishing features of a custodial interrogation."  *United States v. Craighead*, 539 F.3d 1073, 1087 (9th Cir. 2008).  Further, "the length and manner the questioning," which was incriminatory and accusatory over three hours(*see* Ex. K at 44-65), supports the custody finding.  *See Kim*, 292 F.2d at 977 ("[T]he overall length and manner of questioning . . . support[s] the conclusion that Kim was 'in custody,'" where the questioning lasted 50 minutes and the questions covered in detail her "sale activities").

Most importantly, Mr. Fritsch was objectively not free to leave.  At the time of the interrogation, the agents had an arrest warrant for Mr. Fritsch.  (Dkt. No. 1; Ex. 2.)  Mr. Fritsch never left the StarClub offices that day; instead, at the immediate conclusion of the interview, he was arrested and taken to MDC.  (Ex. 2.)  The agents told him he could not leave.  *See Craighead*, 539 F.3d at 1087 ("[W]e consider whether the suspect was informed that questioning was voluntary and that he was free to leave

---

[1] The defense reserves the right to correct errors and omissions in the draft transcripts produced by the government.

2

or terminate the interview."). Mr. Sanders asks the agents, "Is everybody going to be free to go?" (Mot. 3, Ex. K, at 15.) SA Austin responds: "[A]t this time we're going to as[k] Mr. Fritsch to stay here, uh and continue to answer the questions." (*Id.*) Again, a moment later, SA Austin refuses to tell Mr. Fritsch he is free to leave: "I can't, I can't, you understand I can't tell people, you know yeah you're free or you know." (*Id.*) SA Austin's unequivocal response—which would be reasonably understood by anyone including Mr. Fritsch—is that Mr. Fritsch cannot leave.[2] His immediate arrest following the questioning is direct evidence that the interrogation was custodial. *Cf. United States v. Crawford*, 372 F.3d 1048, 1060 (9th Cir. 2004) (finding repeated reminder that the suspect was free to leave was "[p]erhaps most significant for" determining the interrogation was non-custodial where defendant "was, in fact, returned home at the end of the interview").

> **2.     The government cannot meet its burden to demonstrate waiver.**

Because Mr. Fritsch was subject to custodial interrogation, the government bears the "heavy burden" of proving that Mr. Fritsch was waived his Miranda rights. *Miranda*, 384 U.S. at 475 ("[A] heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel."). Any such waiver must be proven by the government to be made voluntarily, knowingly and intelligently. *Id.* at 444. The government argues that Mr. Fritsch "impliedly waived" his rights to remain silent and to counsel by speaking with the agents. (Mot. 3 at 13-16.)

---

[2] Contrary to the government's contention (at 12), the fact that Mr. Fritsch was told he was not under arrest "at this time" is not determinative, as arrest is not coextensive with whether Mr. Fritsch was free to leave. *See United States v. Beraun-Panez*, 812 F.2d 578, 581 (9th Cir.) (holding defendant was in custody where "[h]e was not told he was under arrest, but the district court appeared to believe Beraun-Panez's testimony that he also was not told he was free to leave."); *see also United States v. Carroll*, 102 F. Supp. 3d 1134, 1137 (N.D. Cal. 2015) ("[A] reasonable lay person would not necessarily equate the absence of an arrest with complete freedom to leave an interrogation.").

3

### a.      Mr. Fritsch expressly declined to waive his Miranda rights.

**First**, any implied waiver is directly contradicted by Mr. Fritsch's prior, express refusal to waive his Miranda rights.  (Mot. 3, Ex. J.)  Mr. Fritsch refused to sign the Miranda waiver form and expressly crossed out his willingness to speak to the agents without counsel.  (*Id.*)  Given Mr. Fritsch's unambiguous refusal to waive his rights, the agents continued questioning violated his Fifth Amendment rights.  *See United States v. Heldt*, 745 F.2d 1275, 1277-78 (9th Cir. 1984) (holding Heldt's refusal to sign the Miranda waiver form was important evidence supporting the finding that he did not waive his rights); *United States v. Andaverde*, 64 F.3d 1305, 1313 (9th Cir. 1995) ("[A] refusal to sign a waiver form is an indication that the defendant is invoking his right to silence which casts 'initial doubt on the government's waiver claim.'").  This is particularly so where Mr. Fritsch made multiple amendments to the waiver form, indicating his lack of understanding of any theoretical waiver: refusing to initial that he understood his statements could be used in court and annotating that he wanted a lawyer present.  (Ex. J, Ex. K at 3-6.)  At the very least, the agents had an obligation to clarify whether Mr. Fritsch intended to invoke his rights.  *See United States v. Rodriguez*, 518 F.3d 1072, 1080 (9th Cir. 2008) ("Prior to obtaining an unambiguous and unequivocal waiver, a duty rests with the interrogating officer to clarify any ambiguity before beginning general interrogation."; holding that government could not meet its "heavy burden of proving an initial knowing and intelligent waiver of Miranda with an ambiguous or equivocal reference to Miranda rights").  Instead of honoring its duty to clarify, the agents immediately began questioning, ignoring Mr. Fritsch's invocation.

### b.      Mr. Fritsch could not knowingly and intelligently waive his right to counsel due to the presence of conflicted counsel.

**Second**, Mr. Fritsch did not knowingly and intelligently waive his Miranda right to counsel because his attorneys had an actual conflict of interest and provided ineffective assistance.  For the government to succeed on its claim that Mr. Fritsch

impliedly waived his right to counsel, the government must prove he waived the right "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Berghuis v. Thompkins*, 560 U.S. 370, 382-83 (2010). The government cannot meet its burden because the attorneys present during the interrogation were under an actual conflict of interest.[3]

The Supreme Court has long held that "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970). Additionally, "[t]he right to counsel's undivided loyalty is a critical component of the right to assistance of counsel." *Bonin v. California*, 494 U.S. 1039, 1044 (1990). Where an attorney is affected by an actual conflict of interest, his representation is ineffective and presumed prejudicial. *See Mickens v. Taylor*, 535 U.S. 162, 166–72 (2002); *see United States v. Ramirez*, No. 1:19-CR-02058-SMJ-4, 2020 WL 9457064, at *6 (E.D. Wash. Dec. 29, 2020) (holding that "the right to effective assistance of counsel, in the context of a preindictment custodial interrogation, includes 'a correlative right to representation that is free from [actual] conflicts of interest'" (quoting *Wood v. Georgia*, 450 U.S. 261, 271 (1981)).

Mr. Sanders and Mr. Johnson—the two attorneys present during parts of Mr. Fritsch's interrogation—were under an actual conflict of interest and could not, and did not, provide effective assistance of counsel. The attorneys repeatedly notified the government that they were not present to represent Mr. Fritsch, but were present to protect the company—StarClub. Just three minutes after the alleged implied waiver of counsel, SA Potocek asked Mr. Sanders: "[D]o you represent Mr. Fritsch?" (Ex. K at

---

[3] Alternatively, Mr. Fritsch expressly invoked his right to counsel. *See Miranda*, 384 U.S. at 474 ("If the individual states that he wants an attorney, the interrogation must cease until an attorney is present."); *Fare v. Michael C.*, 442 U.S. 707, 719 (1979) ("[A]n accused's request for an attorney is per se an invocation of his Fifth Amendment rights."). Mr. Fritsch expressly crossed out his agreement to be questioned "without a lawyer" on the waiver form and replaced it with "with a lawyer." (Ex. J.) In addition, according to the government, Mr. Fritsch "asked if Charles Sanders and Daniel Johnson . . . could be present for the interview." (Mot. 3, Ex. H.) Thus, in the alternative, Mr. Fritsch was entitled to conflict-free, effective representation because he had affirmatively invoked his right to counsel for a custodial interrogation.

5

4.)  To which Mr. Sanders replied, "I do work for the company . . . it's intellectual property."  (*Id.*)  Mr. Johnson concurred, explaining he is "outside counsel" and suggesting that Mr. Fritsch "and the company should get specialized criminal defense [] lawyers to deal with this" because he "can't make heads or tails of what is going on."  (*Id.* at 13.)  Mr. Sanders does not even know whether the interrogation "is "part of a criminal investigation or part of a civil investigation," failing to comprehend the effect of Mr. Fritsch's purported Miranda waivers.  (*Id.* at 26.)  Ultimately, Mr. Sanders and Mr. Johnson repeat numerous times that they are present to protect the company.  (*Id.* at 33 (concerned about whether the criminal investigation of Mr. Fritsch is "going to be very interruptive to progress of the business"); *id.* at 34 (asking whether StarClub can "continu[e] with regular business").

They also directly raise to the agents that the questions they are posing to Mr. Fritsch are putting the attorneys in compromised ethical positions.  After a particularly incriminatory line of questioning, Mr. Sanders says "we have an obligation I think within a code of ethics to confer."  (*Id.* at 51.)  He goes on to say his "professional [] responsibilities" prevent him from advising Mr. Fritsch.  (*Id.* at 51-52.)  He reminds the agents that neither he nor Mr. Johnson are "criminal attorneys" and he "feel[s] that this is inappropriate" because he does not "know what to advise you."  (*Id.* at 52-53.)  But the agents do not cease their questioning.  Even after the government admits Mr. Fritsch expressly invoked his right to remain silent, the agents persist.  Mr. Sanders reminds them "he's not represented by counsel," but the agents go on for another 80 minutes.  (*Id.* at 60; Ex. 3.)  At the conclusion of hour two—with another hour to go— SA Austin states "since you already asked for your-for an attorney to be present, legally I should probably have that attorney present []."  (Ex. J at 65; Ex. 3.)

Mr. Sanders and Mr. Johnson were conflicted from representing Mr. Fritsch and could not competently provide him any advice because they represented an adverse party and Mr. Fritsch's employer: StarClub.  As the Supreme Court explained, "[i]t is inherently wrong to represent both the employer and the employee if the employee's

interest may, and the public interest will, be advanced by the employee's disclosure of his employer's criminal conduct." *Wood*, 450 U.S. 261 at 269 n. 15 (internal quotation omitted). Relying on this portion of *Wood*, the Ninth Circuit has held that a lawyer who attempted to represent the defendant employee and the unindicted employers could not be effective, and "[t]his predicament gave rise to an actual conflict of interest" that inherently adversely affected the proceedings without any additional showing. *United States v. Allen*, 831 F.2d 1487, 1496–97 (9th Cir. 1987). Similarly, Mr. Fritsch is adverse to StarClub, the company that the agents are expressly and directly accusing him of stealing from and misappropriating its funds. The same lawyers cannot represent them both. Where, as here, a defendant can show "an actual conflict of interest adversely affected his lawyer's performance," the court must "presume prejudice." *Mickens*, 535 U.S. at 166–72.

Because Mr. Sanders and Mr. Johnson could not effectively provide counsel to Mr. Fritch due to their actual conflict of interest in their simultaneous representation of StarClub, Mr. Fritsch could not knowingly and intelligently waive his right to counsel. Alternatively, he was denied the right to counsel he expressly invoked by the presence of conflicted counsel that could not effectively represent him. For these reasons, Mr. Fritsch's Miranda right were violated and the August 2, 2017 interrogation of Mr. Fritsch cannot be used at trial.

**B.    The May 24, 2017 recordings must be excluded at trial.**

**1.    The recordings are incomprehensible.**

The government moves to offer select portions of 9 hours of audio recorded by Danny Guy, an informant, and an FBI UC from May 24, 2017. These recordings are indecipherable. The quality of the audio is abhorrent. (*See* Exs. 5 & 6 (DG and UC recordings, manually filed).) Most of the recordings are useless, garbled noise. (*Id.*) Although it is clear that unidentified persons are speaking, their words cannot be made out. About every fourth word can be understood. For this reason, the government has not even attempted to transcribe the vast majority of the nine-hour recordings. (Ex. 7,

Dec. 9, 2024 Email from M. Tait.)  At most, an hour of the recordings have been, and can be, transcribed.[4]  (Mot. 3, Exs. B-G.)  Even those transcripts are riddled with notations that the audio is "U/I" or "unintelligible."  (*See* Ex. 4.)

"A recorded conversation is generally admissible unless the unintelligible portions are so substantial that the recording as a whole is untrustworthy."  *United States v. Lane*, 514 F.2d 22, 27 (9th Cir. 1975).  The audio files are so uniformly unintelligible that the recordings cannot be presented to the jury.  The jurors will not be able to hear or understand "substantial portions of the conversations recorded on the tapes" and "the words [are] unintelligible."  *United States v. Tisor*, 96 F.3d 370, 377 (9th Cir. 1996).  The defense requests that the Court review the lodged audio files containing the recordings made by Danny Guy and the UC, as those recordings demonstrate the futility of playing them for the jury.  (*See, e.g.*, Ex. 6 at 02:13; 03:20, 04:23:15.)  The government should not be permitted to introduce unintelligible and un-transcribable audio files at trial.

### 2.    The recordings are irrelevant and violate Rule 403.

In Counts 1 and 2 of the Indictment, the government charges two investments into StarClub made by Danny Guy in January 2015 and by Ian Mann in January 2016.  (Dkt. No. 19.)  Therefore, the relevant time to establish that Mr. Fritsch allegedly made misrepresentations to the investors is prior to January 2016.  However, in this motion, the government seeks to introduce recordings that took place 20 months after the last allegedly fraudulent investment.  This August 2, 2017 conduct is too-far outside of the applicable timeframe to be relevant.

Moreover, according to the government, the conduct alleged in the May 24, 2017 recordings concerns a separate scheme.  In a wire fraud case, the scheme "refers to the overall design to defraud one or many by means of a common plan or technique."

---

[4] The defense reserves the right—to the extent possible—to correct errors and omissions in the draft transcripts produced by the government and to produce its own transcripts of any un-transcribed portions.

*United States v. Rogers*, 321 F.3d 1226, 1229 (9th Cir. 2003). The Indictment alleges a scheme whereby Mr. Fritsch made misrepresentations to investors Danny Guy and Ian Mann concerning the success of StarClub and the intended use of investor funds in order to solicit funds from them. (Dkt. No. 17.) However, the recordings pertain to a separate scheme, according to the government, whereby Mr. Fritsch promised to pay kickbacks to Danny Guy for third-party investments he brough in to StarClub, such as an investment by the UC. (Mot. 3 at 6-7.) Moreover, by August 2017, the product produced by StarClub had substantially changed and no longer concerned the "Channels" outlined in the Indictment. (Dkt. No. 17 ¶ 3(d); Ex. K at 23.) In its attempt to introduce the August 2017 recordings, the government is "attempt[ing] to prove an entirely different case under an entirely different theory" from the one initially charged. *United States v. Milwitt*, 475 F.3d 1150, 1158 (9th Cir. 2007). It should not be permitted to do so.

In addition, the defense objects to the introduction of the recordings of the August 24, 2017 meeting because they are unfairly prejudicial, will confuse the issues, will create a minitrial, and will mislead the jury under Rule 403. This meeting will involve a mini-trial concerning the UC, who has no other relevance to this case, regarding events that post-date the relevant investments by at minimum 20 months. The parties will need to explain the details of the alleged kickback scheme, and the defense will need to explain to the jury why this scheme was not only legal (finder's fees are legal), but distinct from the misrepresentation-based scheme alleged in the Indictment. This will necessitate calling additional witnesses and questioning existing witnesses at length about the practice of finder's fees, which are irrelevant to the scheme charged. Because of the likelihood of confusion, the waste of time, and the likelihood of misleading, the defense objects to the introduction of the recordings at trial.

**C.    The defense is entitled to provide counter-designations.**

Should the recordings from August 2, 2017 or May 24, 2017 be admitted at trial for the government, the defense reserves the right to counter-designate portions of the recordings on grounds of completeness, or because they are not hearsay under Rule 801 or under an exception in Rules 803 or 804, or for any other lawful reason.  Portions of these recordings may also be admissible and introduced with witnesses other than Mr. Fritsch or may be offered as impeachment.

## III. CONCLUSION

The defense respectfully requests that the Court preclude the government from introducing defendant's August 24, 2017 custodial interrogation and the surreptitious recordings made by Danny Guy and the UC on May 24, 2017 at trial.