# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>           v.<br><br>Bernhard Eugen Fritsch,<br>    Defendant. | CR 17-520 DSF<br><br>Order GRANTING the Government's Motion *in Limine* to Exclude Defendant's Noticed Experts (Dkt. 352) |

Defendant Bernhard Eugen Fritsch is charged with two counts of wire fraud in violation of 18 U.S.C. § 1343. Dkt. 19. The government seeks to exclude the expert testimony of Fritsch's four noticed experts—Jeffrey Andrien, Annabelle Burguiere, Taylor Ehrlich, and Eugene Izumo—pursuant to Federal Rules of Evidence 401, 402, 403, and 702. Dkt. 352 (Mot.) at 1. Fritsch opposes. Dkt. 369 (Opp'n).

District courts act as gatekeepers for expert testimony by applying Rule 702 to ensure evidence is both relevant and reliable. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999) (Daubert imposed a special "gatekeeping obligation" on trial judges for all expert testimony). A witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise," if the proponent of the testimony demonstrates "that it is more likely than not" that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent bears the burden of proving the proffered testimony satisfies Rule 702. See Cooper v. Brown, 510 F.3d 870, 942 (9th Cir. 2007). In determining whether to allow expert testimony, the trial judge "must strike the appropriate balance between admitting reliable, helpful expert testimony and excluding misleading or confusing testimony to achieve the flexible approach outlined in Daubert." United States v. Rincon, 28 F.3d 921, 926 (9th Cir. 1994). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." Primiano v. Cook, 598 F.3d 558, 565 (9th Cir. 2010).

At the government's request, the defendant must provide a written disclosure for any expert testimony the defendant intends to use under Federal Rule of Evidence 702 during the defendant's case-in-chief at trial. Fed. R. Crim. P. 16(b)(1)(C)(i).

The disclosure for each expert witness must contain:

• a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief;

• the bases and reasons for them;

• the witness's qualifications, including a list of all publications authored in the previous 10 years; and

• a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Fed. R. Crim. P. 16(b)(1)(C)(iii).

2

These disclosures fail to do so.[1]  In addition, the Court is required to determine the reliability of the expert's opinion before allowing the testimony.  It is not clear that the Court has been provided with sufficient information to make that determination.

### 1.     Jeffrey Andrien

According to the defense, Andrien is expected to opine regarding (1) StarClub's potential for significant growth; (2) the speculative nature of startup valuations; (3) founder bias; and (4) the distinct nature of investing in privately held startups.  Dkt. 352-1.

Because the government does not allege that Fritsch "misrepresented StarClub had a potential for significant growth" or anything about StarClub's valuation, it argues that Andrien's first two opinions are irrelevant and immaterial.  Mot. at 4-5.  It also argues that Andrien's opinions regarding founder bias should be excluded because they are not specific to Fritsch, they are not helpful to the jury, they are not relevant to the charged crimes, or they reflect an improper conclusion about Fritsch's mental state.  Id. at 5.  Regarding Andrien's fourth opinion, the government asserts that this case does not concern "the subjective value of StarClub" or "whether valuation considerations differ for public versus private companies."  Id. at 6.  The government contends that none of Andrien's proffered opinions are relevant to Fritsch's alleged misrepresentations regarding StarClub's historical spending and revenues, negotiations with companies, and current investors.  Id.

---

[1] As the defense notes, the Court expressed concern about the level of detail in the disclosures.  In the opposition, the defense states that it has now provided additional detail and will provide supplemental disclosures and that it "reserves the right to further supplement its notices to the extent the Court continues to harbor concern about the level of detail provided to government counsel."  Opp'n at 1.  The initial disclosures are required to comply with Rule 16(b).  The defense cannot simply dole out information piecemeal until the Court finds it sufficient.  In any event, the promised supplemental disclosures have not been provided.

Fritsch first argues that Andrien's testimony regarding the capital raising process for startups is highly relevant to help the jury assess the actions of Fritsch and victim DG, particularly given the unique nature of investing in startups. Opp'n at 5. Second, Fritsch argues that Andrien's testimony is necessary to rebut the government's anticipated testimony that none of StarClub's prospective business deals had substance. Id. at 6. He asserts that Andrien will "explain that StarClub had potential for significant growth because the market was severely underserved," which will help the jury understand the context in which Fritsch was soliciting investments and in which investors, like DG, were deciding to invest. Id. Finally, Fritsch argues that Andrien's testimony regarding founder bias is particularly relevant for assessing Fritsch's alleged misrepresentations, such as those regarding potential business deals. Id. at 6-7. He asserts that the testimony "will help the jury assess Mr. Fritsch's statements as a founder of a startup company as the jury decides whether or not he acted with fraudulent intent." Id. at 7.

In reply, the government first argues that Fritsch's disclosure is "wholly deficient" to the extent Andrien "is offered to provide relevant testimony about general industry standards" and improper to the extent Andrien is offered "to opine that D.G. was negligent or should otherwise be blamed." Dkt. 381 at 6. Second, the government asserts that testimony regarding the valuation of StarClub is irrelevant and will not rebut the fact that -- contrary to Fritsch's representations -- companies such as Disney and Yucaipa did not pursue commercial partnerships with StarClub. Id. at 6-7. Finally, the government argues that testimony that Fritsch did not act with fraudulent intent because he is a founder of a startup invades the province of the jury. Id. at 7. It asserts that future financial projections will not be at issue at trial, "[s]o to the extent that Mr. Andrien's testimony is being offered to argue that unrealistic financial projections were a result of 'founder bias', the testimony is irrelevant, confusing, and a waste of time." Id.

Unlike the other expert disclosures, Andrien's disclosure provides four specific opinions in bullet point form. However, the defense has failed to demonstrate how these opinions are relevant. As the

4

government repeatedly states, StarClub's valuation and potential for growth are not at issue. Further, the Court agrees with the government that testimony regarding founder bias is irrelevant to Fritsch's alleged misrepresentations regarding StarClub's commercial partnerships, revenue, or investors. Fritsch's alleged misrepresentations "relate to concrete, historical spending and earnings, not subjective valuations of the company" or future financial projections. Dkt. 381 at 6-7.

For these and the other reasons stated by the government, the motion is granted.

### 2. Annabelle Burguiere

The defense believes Burguiere will testify regarding (1) "[t]he type of intellectual property assets relating to StarClub and/or Mr. Fritsch during the Relevant Period"; (2) "[t]he standard approaches to intellectual property valuation"; and (3) "[t]he evidence of notable value related to the intellectual property assets relating to StarClub." Dkt. 352-2.

The government argues that the type of intellectual property Fritsch or StarClub had is irrelevant because the government is no longer pursuing the allegations regarding StarClub's patents or any other intellectual property assets. Mot. at 7. It argues that her second and third opinions are also irrelevant because Fritsch's "misrepresentations did not relate to the subjective value of StarClub or its intellectual property rights" but to the identity of investors, technology cost, revenues, and the existence of commercial partnerships. Id.

The Complaint alleges that StarClub "has invested 4 years and $90m developing its own ***proprietary enabling technology/IP*** through its wholly owned StarSite system—***with 9 patents filed and 6 patents issued***." Opp'n at 3; see also Dkt. 1 (Compl.) ¶ 66. Fritsch argues that Burguiere's testimony is therefore relevant because it goes to the truthfulness of the Complaint's allegations, which directly implicate the value of the intellectual property owned by StarClub and

5

Fritsch. Opp'n at 3. He also argues that Burguiere's testimony defining intellectual property and explaining how it is valued by investors will help the jury understand the testimony of multiple other witnesses at trial. Id. at 3-4.

In reply, the government argues that Burguiere's testimony should be excluded because "[t]he subjective value of whatever intellectual property [Fritsch] and StarClub may have owned is not relevant to the amount of money StarClub spent in developing that technology," and "[Fritsch's] misrepresentation related solely to the amount spent, not the value someone assigned to the technology." Dkt. 381 at 2. The government disputes that fact witnesses will frequently discuss intellectual property rights at trial and therefore argues "there is no need to call an expert to explain such rights." Id. at 2-4.

Despite the Court's expressed concerns, Fritsch describes the topics about which Burguiere will testify, but does not reveal what her opinions are or what her testimony will be. For example, she "will define intellectual property for the jury and provide an explanation of how it is valued by investors." Opp'n at 3. But neither the definition nor the explanation is provided.[2] Fritsch's expert disclosure therefore fails to comply with Rule 16(b).

For this and the other reasons stated by the government, it appears unlikely that Burguiere's testimony will be relevant or helpful. The motion is granted.

### 3.   Taylor Ehrlich

The government argues that Ehrlich's expected testimony—that "StarClub was a legitimate start-up venture"—is irrelevant. Mot. at 8; see also Dkt. 352-3. It asserts that it is not alleging StarClub was "illegitimate," but "[w]hether StarClub was 'legitimate' or not, the

---

[2] It is not clear why the defense refers to statements relating to patents in the Complaint, when the government has advised that it is not proceeding on that issue.

6

evidence will show that [Fritsch] made misrepresentations about the use of investor funds for StarClub." Mot. at 8.

Fritsch asserts that Ehrlich will opine that the government has mischaracterized certain expenses as the illegitimate misappropriation of investor funds that can instead be characterized as legitimate expenses for StarClub's business. Opp'n at 7. According to Fritsch, Ehrlich will both "explain[] the numerous indicia of a legitimate business that existed at StarClub" and "respond to the anticipated testimony of forensic accountant Consuelo De Los Santos." Id.

In reply, the government argues that Ehrlich's testimony should be excluded because Fritsch's disclosure is "wholly deficient" and fails to provide adequate notice to the government. Dkt. 381 at 7-8; see also Fed. R. Crim. P. 16(b)(1)(C)(iii). The government also argues that "Ehrlich's testimony will rebut nothing" because DeLosSantos will not be testifying as an expert witness and will not provide any testimony "about the legitimacy of the uses of investor funds" or "about the 'legitimacy' of [Fritsch's] expenses." Dkt. 381 at 8.

Again, Fritsch's expert disclosure fails to comply with Rule 16(b). Although Fritsch explains that Ehrlich will "opine that the government has mischaracterized certain expenses," he does not say what expenses those are or how they are mischaracterized. And even if legitimacy were an issue, he does not identify "the numerous indicia of a legitimate business that existed at StarClub." Opp'n at 7.

For these and the other reasons stated by the government, the motion is granted.

### 4. Eugene Izumo

The defense anticipates that Izumo may testify regarding (1) "the valuation of StarClub;" (2) "the complexities of valuation for a privately held startup such as StarClub;" and (3) "the capital raising process from the perspective of both the investor and the company seeking investment." Dkt. 352-4.

7

The government reiterates that the "valuation" of StarClub—as opposed to its cost and revenue—is irrelevant. Mot. at 9. It argues that Fritsch's "attempt to confuse the issues and mislead the jury through the admission of Mr. Izumo, Mr. Andrien, and Ms. Burguiere's testimony regarding 'valuation' should be rejected." Id. Finally, it argues that it is undisputed that Fritsch raised capital for StarClub and that testimony regarding companies' "capital raising process" is therefore irrelevant. Id.

Fritsch asserts that Izumo's testimony is relevant given that DG will testify regarding statements Fritsch allegedly made during "pitch meetings." Opp'n at 4. Fritsch argues that "Izumo will provide much needed context concerning initial meetings between founders and potential investors, and the due diligence process that is expected to follow initial meetings." Id. He contends Izumo's testimony goes to the materiality of Fritsch's alleged statements and will help the jury understand financial industry standards. Id. Fritsch also argues that Izumo's testimony explaining reverse takeovers is relevant because DG attempted at least one reverse takeover of StarClub. Id. at 5. He argues that without this testimony, "[DG's] scheme to either take over StarClub or steal its intellectual property and remove the company as a competitor cannot be understood by the jury." Id.

In reply, the government argues that Fritsch is offering Izumo's testimony to blame the victim, which is improper because "[a] victim's negligence, carelessness, or failure to take a specific 'due diligence' action is not a defense to wire fraud." Dkt. 381 at 4. It also contends that Fritsch has failed to show how Izumo's testimony regarding general investment and industry practices is relevant to the materiality of Fritsch's misrepresentations. Id. at 5. Finally, the government argues that Izumo's testimony regarding reverse takeovers is irrelevant and unnecessary because Fritsch's theory that DG attempted a reverse takeover of StarClub is unsupported, and Fritsch may nonetheless present this theory through cross-examination of DG. Id. at 5-6.

The defense fails to indicate what Izumo will say about the capital raising process, the valuation of StarClub, or reverse takeovers.

8

Again, Fritsch's expert disclosure provides topics, not opinions. And the disclosure does not even mention the topic of reverse takeovers. The disclosure's lack of specificity violates Rule 16(b) and makes it impossible for the Court to evaluate the relevance of Izumo's potential testimony.[3]

Further, it would be inappropriate for Izumo to testify that "persons familiar with the financial industry would reasonably expect a sophisticated investor and, indeed, a hedge fund manager like [DG] to engage in a due diligence process after an introductory meeting or a sales pitch meeting." Opp'n at 4. Fritsch cites Lindsey, but Lindsey does not necessarily help him. United States v. Lindsey, 850 F.3d 1009, 1016 (9th Cir. 2017) ("As long as defendants do not stray into evidence of the behavior of individual lenders—for instance, evidence of specific prior bad loans or particular mistakes by underwriters—defendants may attack materiality through industry practice."). Under Lindsey, Izumo cannot testify that DG intentionally disregarded Fritsch's false statements or did not generally give weight to certain information. Id. (holding "a victim's intentional disregard of relevant information is not a defense to wire fraud"). As the Ninth Circuit stated, "materiality is an objective element, and an absence of reliance does not affect its presence." Id. at 1015-16. But Izumo could testify—assuming it would be true and have a reliable basis—that it is the general practice in the industry to ignore the types of representations allegedly made by Fritsch. See id. at 1016 (explaining that "it would be admissible for a defense expert to testify that, while mortgage applications usually ask about marital status, the general practice in the industry is to ignore marital status when making lending decisions"). Here, however, the Court agrees with the government that "it is entirely unclear what, if anything, Mr. Izumo is expected to say

---

[3] Fritsch has not provided sufficient notice of Izumo's testimony in the expert disclosure. However, the Court may reconsider the relevance of his testimony after DG's cross-examination.

9

about the general industry practices as they relate to the charges in this case" and to materiality specifically.  Dkt. 381 at 5.

      For these and the other reasons stated by the government, the motion is granted.


IT IS SO ORDERED.


Date: January 9, 2025                   _____
                                                Dale S. Fischer
                                                United States District Judge